HINGHAM AND QUINCY BRIDGE AND TURNPIKE CORPORATION *vs.* COUNTY OF NORFOLK & others.

The legislature have power to pass an act providing that a turnpike shall be laid out as a highway, and that the supreme judicial court shall appoint commissioners to estimate and award the amount to be paid to the turnpike company as damages for taking their property, and also to determine and decree in what proportions this amount shall be paid by the counties in which the turnpike lies; and such counties cannot object to the constitutionality of such an act on grounds which affect merely abutters or towns, nor call in question the decision of the legislature as to how much property of the company is necessary for the public use.

PETITION setting forth that the petitioners were by *St.* 1807, *c.* 92, incorporated for the purpose of laying out, making and keeping in repair a turnpike from a certain point in Hingham to a certain point in Quincy, with bridges, draws, toll-gates, &c. ; that under said act they constructed and have since maintained said turnpike, &c. ; that by *St.* 1862, *c.* 177, the turnpike and bridges were made a public highway, and it was provided that the supreme judicial court, upon application of said corporation, or of ten legal voters of either of the counties of Norfolk or Plymouth, should appoint a board of commissioners consisting of three disinterested and suitable persons, not residents of either of said counties, whose duty it should be, after having been sworn to the faithful and impartial performance thereof, to estimate, and, after due notice to all parties interested, and a hearing, to determine and award the amount to be paid to said corporation as damages for the laying out of said turnpike, &c., and also the amount to be paid for the toll-houses and the land

under and around them, belonging to said corporation, and to determine and decree in what proportions said amount should be paid by the counties of Norfolk and Plymouth respectively; and also to determine and award certain other matters and things therein set forth; and praying for the appointment of three commissioners, as therein provided.

Upon this petition, after due proceedings had, and against the objection of the county of Norfolk, three commissioners were appointed, who returned their award, fixing the damages to be paid for the laying out of the turnpike, &c., as a highway at the sum of $14,800, and the amount to be paid for the toll-houses and the land under and around them at the sum of $1200, making the whole amount $16,000, and determining and decreeing that of this sum the county of Norfolk should pay three quarters and the county of Plymouth one quarter. The petitioners moved for the acceptance of the award.

The respondents then offered evidence, (which was objected to by the petitioners as inadmissible, but which was admitted by the court,) proving that the toll-houses and the land under and around them, referred to in said act, and for which said commissioners estimated and determined the amount to be paid under said act, are, in such respects as are hereinafter stated, exterior to and outside of the limits of said turnpike, way, bridges, draws and piers; that said estates were held by said corporation in fee and by purchase, and, wherever outside of the road limits, by other title than the exercise of the right of eminent domain; that one of said estates comprises one and seven tenths acres, with a building used in part as a toll-house, and in part for the residence of the collector of tolls, all outside of the limits of the turnpike, and not otherwise used for highway purposes; that another of said estates comprises 3429 square feet, with a building thereon, used in part as a toll-house, and in part for the residence of the collector of tolls, and is partly exterior to and outside of the limits of said location; that all the lands exterior, as aforesaid, exclusive of the sites of the said buildings, were purchased by the said corporation for a sum not exceeding one hundred and fifty dollars; that they were acquired by the

said corporation, and have always been used as a means of conveniently and economically paying the salaries of the toll-keepers by furnishing them with land for gardens. And the toll-house buildings have been convenient as toll-houses and for the residences of the collectors of tolls, and have been usually so used and occupied; and, saving as aforesaid, said estates are not connected with the use and operation of said turnpike and bridges.

The respondents objected to the acceptance of the award, and to any proceedings in the case, because said act was in all respects void, and especially in these particulars:

1. That no compensation is made to abutters, or to persons from whom the lands were taken or purchased, their heirs or assigns.

2. That parcels and buildings outside of and beyond the limits required, and not useful or necessary for a highway, are taken, or assumed to be taken.

3. That the legislature have exceeded their constitutional powers in exercising judicial powers; in delegating legislative and judicial powers to the commissioners; in authorizing the exercise of such powers, and depriving the towns of a hearing thereon; in imposing unequal and unjust burdens upon counties and towns; in depriving them of the benefit of judicial decrees.

4. That no title vests under the act.

5. That no adequate remedies are afforded in the act.

6. That the bridges are continued as toll-bridges.

7. That no mode of payment of the indemnity is provided.

8. That the act is unconstitutional in its provisions as to adjudications of expenses of repairs; in requiring other towns to pay the damages which are incurred by a delinquent town; in the mode of the decree therefor; and in requiring the towns to be responsible for defects, when their officers are deprived of control and superintendence of the way.

The case was reported by *Merrick*, J. for the determination of the whole court.

*B. F. Thomas & R. Olney*, for the petitioners, cited *Brighton* v. *Wilkinson*, 2 Allen, 27 ; *Wellington, petitioner*, 16 Pick. 87, 96 ; *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152, 167 ; *Heyward* v. *Mayor, &c. of New York*, 3 Selden, 314 ; *De Varaigne* v. *Fox*, 2 Blatchf. C. C. 95; *Warren* v. *Mayor, &c. of Charlestown*, 2 Gray, 84, 99 ; *Commonwealth* v. *Hitchings*, 5 Gray, 482, 485, 486.

*N. F. Safford*, for the county of Norfolk, cited, upon the points determined, *Embury* v. *Conner*, 2 Sandf. 98 ; *Bloodgood* v. *Mohawk & Hudson Railroad*, 18 Wend. 59 ; *In re Albany Street*, 11 Wend. 149; *Kane* v. *Mayor, &c. of Baltimore*, 15 Maryland, 240 ; *West River Bridge Co.* v. *Dix*, 6 How. (U. S.) 545 ; *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 37 ; *Plimpton* v. *Somerset*, 33 Verm. 283 ; Sedgwick on Stat. & Const. Law, 148 ; *Hampshire* v. *Franklin*, 16 Mass. 76.

The other respondents did not appear to oppose the acceptance of the award.

BIGELOW, C. J. Upon the return of the report of the commissioners appointed by this court, in pursuance of the provisions of *St.* 1862, *c.* 177, § 3, the petitioners have moved for its acceptance and confirmation. Although no express provision is made by the statute requiring that the doings of the commissioners should be returned into court, yet it results by necessary implication from the mode of their appointment and the nature of the duties with which they were intrusted, that such return should be made, in order that it may be judicially declared and made known that they have properly exercised the authority conferred upon them, and that their doings may be duly ratified and confirmed, unless sufficient cause is shown to the contrary. *Boston & Worcester Railroad* v. *Western Railroad*, 14 Gray, 253.

To the acceptance and confirmation of the report, no objection is now made by any of the numerous parties interested in the proceedings except by the county of Norfolk. Most of the reasons on which the learned counsel who appears in behalf of this county rely to resist the confirmation of the report are based on grounds of objection which do not affect in any degree the rights or interests of the county, but relate solely to the operation and effect of the act of legislation in establishing the turnpike as a

common highway on the rights of abutters owning land over or through which the turnpike was originally laid out, and on the pecuniary interests of the several towns on which the burden of supporting the road as a highway is imposed. But this class of objections is not open to the county of Norfolk. In the absence of any objection by the other parties interested, the inference is that they consent to the provisions of the act so far as they operate on their interests or affect their rights, and that they waive all objections, as well to the constitutionality of the act and the authority of the legislature to enact it and to the supposed inequality and injustice of its operation, as to the manner in which the commissioners have discharged their duties in pursuance of the authority conferred on them. So far as the rights of other parties are involved in this proceeding, the county of Norfolk must be deemed a stranger to it. The validity of the act can be called in question only by those having a direct interest in the rights supposed to be injuriously affected by its provisions, and no one can interpose to ask for the interference of this court to declare the act void or to prevent its full operation, except so far as may be necessary to support and protect their own property or rights from unauthorized injury or invasion. Even if the act was on its face an encroachment on the rights of any person, and would be deemed to be invalid if passed without the consent of such person, the court is bound, in the absence of any objection, to presume that the necessary consent to render the act valid has been duly given. *Wellington, petitioner*, 16 Pick. 87, 97.

We have then only to consider those objections which may properly be urged against the validity of the act as affecting the corporate rights and interests of the county of Norfolk. The first and leading one is, that the act is unconstitutional and invalid because the legislature, in providing that the amount awarded by the commissioners to the corporation for their road, franchise and other property shall be paid by the counties of Norfolk and Plymouth, have assumed to exercise a power in its nature judicial, contrary to art. 30 of the Declaration of Rights. The gist of this objection, as we understand it, is, that as the

effect of this provision is to take and appropriate the money of
the county without and against their consent, the legislature
should have provided some mode in which the question of the
liability of the county to be charged with this expenditure and
the extent or proportion in which the burden should be borne
by them, if liable at all, should have been determined by a
judicial tribunal duly appointed according to the provisions of
the constitution, with a right to a trial by jury on all disputed
questions of fact; and that the legislature had no power or
authority arbitrarily to determine and enact that the county of
Norfolk should pay a part of the sum to be awarded for the
value of the franchise and property of the turnpike corporation,
and to delegate to commissioners a jurisdiction and authority
to adjudicate and finally decree the share of such sum which
was to be paid by the county. The fallacy which lies at the
basis of this objection consists in a mistaken view of the scope
and purpose of the act in question, and of the nature of the
power or authority by virtue of which it was enacted by the
legislature. The statute was not designed as an exercise of the
right of eminent domain, nor intended to prescribe a mode of
determining controverted and conflicting rights between differ-
ent counties and towns. It was framed under that clause in
the constitution, part 2, *c.* 1, art. 4, which confers on the legis-
lature full power and authority to enact all manner of whole-
some and reasonable laws " as they shall judge to be for the
good and welfare of this commonwealth, and for the govern-
ment and ordering thereof, and of the subjects of the same."
One of the main purposes of this general grant of power was
to vest in the legislature a superintending and controlling au-
thority, under and by virtue of which they might enact all laws
not repugnant to the constitution, of a police and municipal
nature, and necessary to the due regulation of the internal
affairs of the commonwealth. It is obvious that the exercise
of such a power is absolutely indispensable in a wisely gov-
erned and well ordered community ; and among the purposes
for which it is to be exerted none is more essential than a wise
and careful distribution of certain public burdens or duties.

Of these, a leading one is the construction, support and maintenance of roads and bridges. From the earliest history of this commonwealth, the legislature have always made ample provision to secure these objects. As early as 1648 an act was passed, containing a preamble that " bridges in country highways are for the benefit of the country in general, and that it may be unequal to lay the charge thereof on particular towns ; " and providing that they should be built and kept in repair by the counties, and the expense thereof assessed on the several towns in the county, " according to the direction of the law for county rates." Anc. Chart. 55. Prior to this enactment, provision was made by the general court in 1639 for the construction of " country highways " by the county courts at the expense of the towns in which they were laid out. Anc. Chart. 126. Laws of a similar character, both before and subsequent to the adoption of the constitution, have been frequently enacted. Indeed the system under which highways and town ways are now laid out and maintained is founded on the same principles of legislation. It is certainly true that in many cases the burden of performing this public duty does not bear with perfect equality upon those on whom it is thrown. But this is an intrinsic difficulty, which cannot always be avoided. It often happens that a town, owing to its situation on a great route of public travel, and its intersection by a large stream, is obliged to make and support roads and bridges to an extent and at an expense altogether disproportionate to its population and resources, in comparison with other towns in the vicinity. But no one ever supposed that such inequality absolved the town so situated from its legal duty of making and maintaining the roads and bridges within its limits. It is for the reason that this inequality sometimes becomes too great and imposes too heavy a burden on a particular town or county, that the legislature deem it expedient, as in the case now before us, to pass some specific law for the construction and maintenance of a road or bridge with a view to a more just and equal distribution of a public charge among those immediately benefited than would be made under the operation of general laws. Such acts seem clearly to come within

a due exercise of the power conferred by the clause of the constitution above cited, and their validity has been repeatedly recognized by this court. *Norwich* v. *County Commissioners,* 13 Pick. 60. *Brighton* v. *Wilkinson,* 2 Allen, 27. *Commonwealth* v. *Cambridge,* 16 Gray, . It seems to us, therefore, that the objection urged against the validity of the act in question, as being an unauthorized act of legislation, cannot prevail.

The views already expressed are decisive of all the other objections urged in behalf of the county of Norfolk against the validity of the act. The legislature having the power to determine that the county should bear a proportion of the expense of establishing the turnpike as a highway, and having exercised this power, it was competent for them to delegate to commissioners the authority to determine the share or amount of the whole expense which should be paid by the county. *Boston Water Power Co.* v. *Boston & Worcester Railroad,* 23 Pick. 360, 396. The mode in which the power was delegated was certainly wisely adapted to secure an intelligent and impartial tribunal. And as no objection is now urged against the fairness and justice of their award, it is reasonable to infer that the county of Norfolk has suffered no detriment at their hands.

The only remaining objection urged in behalf of the county of Norfolk is, that the statute authorizes the purchase not only of the road and franchise of the corporation but also of real estate owned by them and heretofore occupied as toll-houses. But it was the exclusive province of the legislature to determine how much of the property of the corporation was necessary for the public use. The power includes the right to determine the extent to which it shall be exercised, and, in the absence of anything to show that it was exerted wantonly and oppressively, it is not open to the parties to call it in question in this proceeding *Award accepted.*